**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
SECURITIES AND EXCHANGE
COMMISSION

                                             No. 15-cv-1248 (KPF)

                    Plaintiff,

        -against-

PREMIERE POWER, LLC; JOHN JANKOVIC;
AND JERRY JANKOVIC,

                    Defendants.
------------------------------------------------------------X

### JOHN JANKOVIC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR POSTJUDGMENT RELIEF AND REMEDIES

THE ROTH LAW FIRM, PLLC
Richard A. Roth
295 Madison Avenue, 22nd Floor
New York, New York 10017
Tel: (212) 542-8882
*Attorneys for Defendant John Jankovic*

Dated: July 21, 2017

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT…………………………………………………………………1

FACTUAL BACKGROUND…………………………………………………………............1

    I.    Disgorgement should be limited to the amount Jankovic received as a result of his negligence………………………………………………………………….2

    II.    SEC is not entitled to an award of prejudgment interest………………………………..5

    III.    The court should not impose a substantial civil penalty against Jankovic……………...5

    IV.    The Court Should not grant a permanent Injunction against Jankovic…………..............8

    V.    Conclusion……………………………………………………………………………..10

# TABLE OF AUTHORITIES

**CASES**

*S.E.C. v. Cavanagh*, 445 F.3d 105, 117 (2nd Cir. 2006)……………………................................2

*S.E.C. v. Coates*, 137 F. Supp. 2d 413 (S.D.N.Y. 2001)……………….................................… 6

*S.E.C. v. Contorinis*, 743 F.3d 296 (2nd Cir. 2014)……………….……………………… 2, 3

*S.E.C. v. Elliott*, 2011 WL 3586454 (S.D.N.Y. Aug. 11, 2011)…………………………….… 8

*S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2nd Cir. 1996) …………………………....... 3

*S.E.C. v. Haligiannis*, 470 F. Supp. 2d 373 (S.D.N.Y. 2007)…………………………………..8

*S.E.C. v. iShopnomarkup.com, Inc.*, 126 F. Supp. 3d 318 (E.D.N.Y. 2015)…………………… 4

*S.E.C. v. Kapur*, No. 11 CIV. 8094 PAE, 2012 WL 5964389……………………………….… 6

*SEC v. Lorin,*76 F.3d 458 (2nd Cir. 1996)……………………………………………..........…..10

*S.E.C. v. Lybrand*, 281 F. Supp. 2d 726, 729 (S.D.N.Y. 2003)………………………………....5

*S.E.C. v. Mattera*, 2013 WL 6485949  (S.D.N.Y.  2013)…………………………………….. 5

*S.E.C.  v. Moran*, 944 F.Supp. 286 (S.D.N.Y.1996)…………………………………………… 6

*S.E.C. v. Opulentica, LLC*, 479 F. Supp. 2d 319 (S.D.N.Y. 2007)……………………………..6

*S.E.C. v. Palmisano,* 135 F.3d 860, 866 (2nd Cir.1998)……………………………………… 6

*S.E.C. v. Razmilovic*, 738 F.3d 14 (2nd Cir. 2013)……………………………………….....  3

*S.E.C. v. Universal Exp., Inc.*, 646 F. Supp. 2d 552 (S.D.N.Y. 2009), aff'd, 438 F. App'x 23 (2nd Cir. 2011)………………......………………………………………………….……………… 3

*S.E.C. & Exch. Comm'n v. Universal Major Indus. Corp.*, 546 F.2d 1044 (2nd Cir. 1976)…… 8

*S.E.C. v. 800america.com, Inc.,* 2006 WL 3422670 (S.D.N.Y. 2006)………………………….8

**STATUTES**

15 U.S.C. § 77q(a)(1)-(3)…………………………………………………………………………7

Defendant John Jankovic ("Jankovic") by and through his attorneys, The Roth Law Firm, PLLC, respectfully submit this memorandum of law in opposition to Plaintiff's ("Plaintiff" or the "SEC") application for post- judgment relief and remedies as follows:

## PRELIMINARY STATEMENT

The SEC is asking this Court to impose draconian penalties on a defendant who has been found liable on a negligence standard, and whose underlying conduct is unique given circumstances that will certainly not be repeated.

While, of course, Jankovic would do many things differently if he could, perhaps the most significant thing he would do differently is to not put is trust in his father, Jerry Jankovic, who was the Company's Chairman. Jankovic and his father are now estranged and it can be said with certainty that Jankovic will never be put in a position like he was in with his father. So in that sense, there is no chance that the complained-of conduct will be repeated. Apart from that, however, Jankovic has learned an important lesson about performing his own diligence without relying on others and having direct contact with actual or potential investors to make ensure that no improprieties are occurring. There is no need for injunctive relief under these circumstances.

Finally, much of this litigation revolves around the so-called Morongo Litigation. That litigation involved Jerry Jankovic and Sandra Dyche. Jankovic had absolutely nothing to gain from taking Premiere investor funds to pay a settlement in that case, and that is not what he believed was occurring at the time. To be sure, Jankovic' culpability pales in comparison to his father and Dyche, in particular, who the evidence shows had lied to Jankovic and had directly stolen investor proceeds.

1

Jankovic should have investigated the veracity of the representations that were made to him by his father and Dyche, and should have otherwise performed more due diligence and better communicated with investors, but he did not act with scienter. Any award should reflect the mitigating and unusual circumstances of this case.

## RELEVANT FACTUAL BACKGROUND

According to the SEC, December 20, 2009 is "the earliest date that this Court can consider conduct as it relates to the civil money penalty and disgorgement as a result of the 5-year statute of limitations." *See*, Memorandum of Law in Support of Plaintiff's Remedies Motion ("SEC MOL"), pg. 10.

Within the limitations period, John Jankovic personally received only fifty-seven thousand dollars ($57,000) from his involvement in Premiere. *Id.* Moreover, within the limitations period, John Jankovic's involvement with Premiere was minimal because he "did not have proper transparency and control of the company during [his] tenure" -- and he specifically resigned on January 1, 2012, for that reason. *See*, Opinion and Order, dated March 21, 2017 (the "Decision") (Doc. 62), pg. 15. For this lack of transparency, John Jankovic blames his father, Jerry Jankovic. *Id*.

Throughout the entirety of his activities at Premiere John Jankovic relied on his father Jerry Jankovic (who was Premiere's Chairman) for information and guidance. *Id*., pg. 6. John Jankovic trusted his father, as most sons tend to do, but they are now estranged – and John Jankovic will never trust or have any business relationship with Jerry Jankovic ever again. *See*, Declaration of John Jankovic, dated July 21, 2017 ("Decl. Jankovic"), ¶4.

John Jankovic is in poor financial condition, and cannot cover basic living expenses. *Id*., ¶ 3.

**ARGUMENT**

I. **Disgorgement should be limited to the amount Jankovic received as a result of his negligence**

The purpose of disgorgement is to be a remedy for securities law violations by depriving violators of the fruits of their illegal conduct. *S.E.C. v. Contorinis*, 743 F.3d 296 (2nd Cir. 2014). Disgorgement does not serve a punitive function, as such, the disgorgement amount may not exceed the amount obtained as a result of the wrongdoing. *Id.* That is, the purpose of disgorgement is not to compensate the victims or punish the offender, instead its primary function is to prevent the unjust enrichment of a violator as an equitable remedy. *S.E.C. v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006).

The district court has broad discretion not only in determining whether or not to order disgorgement but also calculating the amount to be disgorged. *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2nd Cir. 1996). It is difficult to determine with exactitude the extent to which a defendant gains resulted from his frauds, the court only needs to make a reasonable approximation of such gains. *S.E.C. v. Razmilovic*, 738 F.3d 14 (2d Cir. 2013). The Second Circuit has stated that the amount to be disgorged must be causally related to the fraud that was committed. *Contorinis,* 743 F.3d at 305 (quoting *First Jersey,* 101 F.3d at 1474–75). Defendants are entitled to prove that the measure is inaccurate, but the amount sought must be reasonable. *U.S. S.E.C. v. Universal Exp., Inc.*, 646 F. Supp. 2d 552 (S.D.N.Y. 2009), aff'd, 438 F. App'x 23 (2d Cir. 2011).

Here, the amount that the SEC is requesting in disgorgement is improper and excessive. That is, the SEC has not met its burden of establishing a reasonable approximation of the gains Jankovic received as a result of his negligence. First, the SEC has conceded that the total amount Jankovic received as a result of his negligence within the applicable statute of

limitations is $57,000. SEC MOL at 15.  Yet, the SEC seeks disgorgement in an amount of $450,000 - the full amount invested within the relevant 5-year period. As stated above, the amount for disgorgement is subject to judicial discretion, and the purpose is to deprive the party of their ill-gotten gains and not serve as a punishment. The total amount Jankovic gained as a result of his negligence is $57,000, so if there is a disgorgement awarded, that should be the total amount.

Next, it is clear that Jankovic was not the primary bad actor and was not responsible for raising all of the funds for Premiere from investors. Indeed, the cornerstone of liability that has been attributed to Jankovic involves false statements in the PIM that was presented to investors on the December 22 Investor meeting. Jankovic was an officer of Premiere, but his conduct pales in comparison to that of his father Jerry Jankovic and Sandra Dyche, the people who were primarily responsible for the misrepresentations within the PIM.  Jankovic relied on Sandra Dyche and Jerry Jankovic that the information within the PIM was accurate.

The SEC is seeking to disgorge the investments of $300,000 by Hyun Ja Kim and Jae Duk Kim and $150,000 from Hee Rak Kim. SEC MOL at 11. That amount represents the total amount raised by Premier in the applicable 5- year statute of limitations. As such, Jankovic should not be required to pay the total amount that was raised as a result of his misconduct. This is especially true because Jankovic's gains from these investments is $57,000. A disgorgement award from this Court for an amount that is eight times the amount gained by Jankovic would simply be improper.

In support of its argument that Jankovic should pay such a high disgorgement amount, the SEC cites *S.E.C. v. iShopnomarkup.com, Inc.*, 126 F. Supp. 3d 318 (E.D.N.Y. 2015) in which the district court held an officer liable for $2.3 million in total proceeds raised in the

fraudulent scheme. *S.E.C. v. iShopnomarkup.com, Inc.*, 126 F. Supp. 3d at 320. But, the violations by the officer in *S.E.C. v. iShopnomarkup.com, Inc.*, is incomparable to the facts herein. That is, the officer had complete control over the company, and was primarily responsible for making the misrepresentations in the offering circular that was used to solicit investors. *Id*. Jankovic was not the primary bad actor and did not control Premier, Jerry Jankovic and Sandra Dyche had control and were primarily responsible in making the misrepresentations to the Premier investors.

Accordingly, for these reasons, the Court should not impose a disgorgement amount of $450,000 against Jankovic.

## II. SEC is not entitled to an award of prejudgment interest

An award of prejudgment interest for violation of securities laws, like the remedy of disgorgement is meant to deprive the violator of the full measure of the violator's ill-gotten gains. *S.E.C. v. Mattera*, No. 11 CIV. 8323 PKC, 2013 WL 6485949 at 15 (S.D.N.Y. Dec. 9, 2013). In deciding whether an award of prejudgment interest is warranted, the court will consider (i) the need to fully compensate the wronged party for actual damages suffered; (ii) considerations of fairness and the relative equities of the award; (iii) the remedial purpose of the statute involved; and (iv) any other general principles that are considered to be relevant by the court.

Here, the factors regarding the conduct of Jankovic weigh in favor of not granting prejudgment interest from his gains. An award of $450,000 plus interest does not compensate the investors for the actual damages suffered. Moreover, considering the circumstances regarding Jankovic's conduct, an imposition of a penalty of this magnitude with prejudgment interest

would simply be inequitable. For these reasons, this Court should not enter an award for prejudgment interest.

### III.     The Court Should Not Impose a Substantial Civil Penalty Against Jankovic

The negligent conduct of Jankovic does not warrant the application of a first-tier penalty from this Court. The Court has wide discretion in determining the appropriate penalty in light of the facts and circumstances. *S.E.C. v. Lybrand*, 281 F. Supp. 2d 726, 729 (S.D.N.Y. 2003). The purpose of civil penalties is to deter securities law violations. In determining the appropriate civil penalty, the courts consider several factors, including:

> (1) the egregiousness of the violations at issue; (2) defendants' scienter; (3) the repeated nature of the violations; (4) defendants' failure to admit to their wrongdoing; (5) whether defendants' conduct created substantial losses of the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities; (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition.

*S.E.C. v. Kapur*, No. 11 CIV. 8094 PAE, 2012 WL 5964389, at 6–7 (S.D.N.Y.)(citing *SEC v. Palmisano,* 135 F.3d 860, 866 (2nd Cir.1998).

These factors are helpful in characterizing the defendants' behavior for the court, but the framework for civil penalties is discretionary, and each case has its own facts that determine the appropriate remedy.   *S.E.C. v. Opulentica, LLC*, 479 F. Supp. 2d 319 (S.D.N.Y. 2007); *S.E.C. v. Coates*, 137 F. Supp. 2d 413 (S.D.N.Y. 2001). In distinguishing the level of culpable conduct, the court has held that there is an unmistakable difference between lesser conduct(negligence) that constitutes fraud under relevant securities laws and conduct which was engaged in with the actual intent to defraud clients. *SEC v. Moran*, 944 F.Supp. 286 (S.D.N.Y.1996) (emphasis added).

In this case, in applying the factors herein, the facts and circumstances of Jankovic's negligent acts weigh in favor of not imposing a civil penalty. First, the conduct of Jankovic was

not egregious because his mental state evidences that his behavior does not rise to the level of intentional conduct. The fact that Jankovic should have been aware of the discrepancies in Yu's Subscription Agreement and Yu's actual investment in Premier, does not rise to the level of egregious behavior. Jankovic relied on representations made by other executives at Premier, which included his father Jerry Jankovic. As such, Jankovic should have been aware of the malfeasance with regard to the investments in Premier and the misstatements in the PIM, but his conduct cannot be egregious, because there was no intent to actually defraud clients or disrupt the market.

Next, it is also undisputed that liability under sections 17(a)(1), (a)(2), and (a)(3) of the Securities Act of 1933 are analyzed under negligence standard, and Jankovic did not have the mental state for intentional conduct. 15 U.S.C. § 77q(a)(1)-(3). That is, the lesser (negligent) conduct that Jankovic engaged in pertains to his failure to follow up on the inconsistent representations made by Sandra Dyche with regard to Yu's Subscription Agreement and Yu's actual investment in Premier, as well as the misstatements in the PIM. There is no scienter here, and despite the SEC's assertion that Courts routinely award first tier penalties for negligence liability, the SEC has cited no case law in support of that proposition.

Jankovic's conduct was an isolated occurrence and does not amount to a pervasive pattern of securities laws violations. Jankovic's negligence does not establish a pattern because they were based on falsehoods perpetrated by other officers of Premier, including his own father. The statements in the PIM and the statements made by Jankovic at the Investors Meeting should have independently been verified by Jankovic prior to the meeting, however, each of these occurrences are a result of Jankovic' s negligent acts by believing and not verifying the statements from other officers of Premier and not any affirmative actions taken by him to

7

mislead. As such, the SEC cannot establish that Jankovic's single negligent act (trusting the officers of Premier) establish a pervasive pattern of violations. Nor is such conduct going to ever occur again because Jankovic is now estranged from his father as a result of the distrust, and he will never be involved with him in business dealings again.

Jankovic's poor financial condition should mitigate any civil penalty imposed on him. Jankovic gained a nominal monetary amount in comparison to the gross amount of pecuniary gain of Premier. Jankovic was not grossly enriched by his negligent acts, and because of the actions taken by his father and the other officers of Premier, Jankovic's current financial condition is poor. *See Decl. Jankovic ¶3* . This Court should consider the contents of the Jankovic Aff. before imposing the draconian civil penalty that the SEC is requesting.

Finally, the Court should not impose a civil penalty on Jankovic because his conduct does warrant a first-tier penalty. That is, because Jankovic's conduct was negligent, mainly relying on the representations of other officers, Jankovic's culpability should be reduced. Moreover, because Jankovic has a poor financial condition as a result of the actions taken by other officers of Premier and his father, the Court should not impose a civil penalty against Jankovic.

### IV.     The Court Should not grant a permanent Injunction against Jankovic

This Court should not grant a permanent injunction against Jankovic because his actions were negligent and the relevant factors are inapplicable to Jankovic's conduct. A permanent injunction is appropriate when there has been a violation of securities laws and there is a reasonable likelihood of future violations. *S.E.C. v. Haligiannis*, 470 F. Supp. 2d 373 (S.D.N.Y. 2007); *S.E.C. v. Elliott*, 2011 WL 3586454 (S.D.N.Y. Aug. 11, 2011).

In determining whether there is a reasonable likelihood of future violations, the court considers: (1) the egregiousness of the violation; (2) the degree of scienter; (3) the isolated or repeated nature of the violations; and (4) the sincerity of the defendant's assurances against future violations. *Id.; see also Sec. & Exch. Comm'n v. Universal Major Indus. Corp.*, 546 F.2d 1044 (2nd Cir. 1976). The court also considers whether the defendant initiated the fraud or merely acted in conjunction with the main violator. *See e.g. S.E.C. v. 800america.com, Inc.,* 2006 WL 3422670 at 11 (S.D.N.Y. Nov. 20, 2006) (denying permanent injunctive relief where defendant did not "initiate [ ] the fraud" but instead "acted at the behest of her co-defendant").

Turning to the merits of Jankovic's negligent conduct here, his culpability does not meet the standard for a permanent injunction. First, as stated above, Jankovic's conduct was not egregious. Jankovic should have independently verified the statements made by Sandra Dyche and ensured that the information in the PIM was accurate. Jankovic's actions were ill advised and based on false representations that were made to him, but his behavior does not amount to egregious conduct.

Jankovic's lack of scienter in his negligent acts should prevent this Court from ordering a permanent injunction. The SEC is correct in stating that scienter does not need to be proven to obtain an injunction under securities laws. But, scienter is still a factor that the Court should analyze in this regard. Moreover, it is a particularly relevant in terms of an injunction, because Jankovic committed no intentional bad acts. Indeed, the SEC wants this Court to prevent Jankovic from failing to recognize when he should conduct a more reasonable investigation into directives from other officers. Jankovic's role in Premier ceased in 2011 once it became clear that he did not have the proper transparency and his father was lying to him.

9

Jankovic's negligent conduct was merely an isolated occurrence and contrary to the mischaracterization by the SEC, Jankovic did not engage in parallel frauds. As stated above, Jankovic's negligence is benchmarked in his failure to adequately verify the statements made by Sandra Dyche with regard to Yu's Subscription Agreement and Yu's actual investment in Premier, as well as the misstatements in the PIM. The misstatements in the PIM was a result of Jankovic's failure again to verify the statements made to him by officers at Premier. In essence, Jankovic's negligent acts were one in the same. That is, Jankovic should have independently verified everything that was being presented to him. These negligent acts do not establish a pattern of conduct, and for those reasons, this Court should not order a permanent injunction against Jankovic.

Finally, there are no facts that support the position that Jankovic is not sincere in assuring this Court that there will be no future violations. The fact that Jankovic has disclaimed *full* responsibility is not probative of his willingness to ensure that there will be no future securities violations.

The SEC cites *SEC v. Lorin,* 76 F.3d 458 (2nd Cir. 1996), for the premise that if a violator persistently refuses to admit wrongdoing, it makes it dubious that the violators are likely to avoid future violations absent a permanent injunction. (SEC at 12). But the facts of *Lorin* are incomparable to the events herein. First, the court found the defendants in *Lorin* liable for scienter by *intentionally* manipulating the stock market by employing fraudulent practices every day for a period of 7 months. The defendants in *Lorin* also *intentionally* violated record keeping provisions to conceal their fraud Moreover, the defendants in *Lorin* were actively still trading securities, and they still showed no remorse or sincerity against future violations.

Here, there are no facts to suggest that Jankovic is susceptible to commit future violations of securities laws. As stated above, his conduct was not egregious, there was no scienter, and his act of negligence was an isolated occurrence. As such, the Court should not impose a permanent injunction against Jankovic.

## **CONCLUSION**

For the reasons above, Jankovic respectfully requests that this Court enter a judgment that: (1) orders a reasonable amount for disgorgement that accurately reflects Jankovic's gains; (2) does not impose a substantial civil penalty; (3) does not permanently enjoin Defendant from violating Section 17(a) of the Securities Act; and (4) allows Jankovic to directly and indirectly solicit and accept funds from any person or entity in an unregistered offering of securities.

DATED:     New York, New York
           July 21, 2017

                                        THE ROTH LAW FIRM, PLLC


                                        By: ___/s/_____
                                             Richard A. Roth
                                          295 Madison Ave, 22nd Floor
                                         New York, New York 10017
                                              Tel: (212) 542-8882
                                              Fax: (212) 542-8883
                                        *Attorneys for Defendant John Jankovic*